# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Martin Edwards & Associates, Inc. | ) ASBCA No. 57718 |
| | ) |
| Under Contract No. W91247-11-D-0004 | ) |

APPEARANCES FOR THE APPELLANT:    H. Addison Winters, Esq.
J. Thomas Neville, Esq.
Yarborough, Winters & Neville, P.A.
Fayetteville, NC

APPEARANCES FOR THE GOVERNMENT:    Raymond M. Saunders, Esq.
Army Chief Trial Attorney
Erica S. Beardsley, Esq.
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

The U.S. Army contracted with appellant, Martin Edwards & Associates, Inc.
(MEA), for the installation and service of clothes washers and dryers at military installations
in North Carolina. The Army terminated the contract for cause, then entered into a bilateral
modification with MEA to convert the termination to a "no-cost" termination for the
convenience of the Army that included mutual releases of all claims arising from the
contract.[1] MEA contends that the modification was induced by misrepresentation and,
therefore, is voidable. MEA also contends that the termination of the contract was
improper, and that the Army breached the contract. While the Board heard eight days of
testimony and the parties filed extensive briefs on the merits, we need not discuss many of
the arguments because, as discussed below, we deny the appeal based upon the
modification's release language.[2]

---

[1] We earlier denied a government motion for summary judgment with respect to the release
in that modification, finding sufficient evidence to raise a triable issue of fact
whether alleged government misrepresentation induced MEA's agreement to the
release. *Martin Edwards & Associates, Inc.*, ASBCA No. 57718, 12-2 BCA
¶ 35,058 at 172,210.

[2] Judge Grant, who presided over the hearing in this appeal, has since retired.

## FINDINGS OF FACT

1. On 31 March 2011, the United States Army awarded to MEA Contract No. W91247-11-D-0004, for the delivery, installation, and 12-month lease of (an estimated) 3,970 washers and dryers at Fort Bragg, Simmons Army Airfield, and Camp Mackall, North Carolina, for $489,351.48 (R4, tab 8 at 1, 4-6, tab 38 at 4).

2. Also on 31 March 2011, the Army issued Task Order No. 0001, requiring MEA to deliver and install the appliances by 15 May 2011 (R4, tab 9 at 3), the end of the contract's 45-day "phase-in" period (R4, tab 7 at 3, ¶ 2.6.1.1).

3. The contract's performance work statement provides:

> HOURS OF OPERATION. The Contractor shall perform services during the following hours: Monday through Friday, 7:30 a.m. through 4:00 p.m. except Federal Holidays, unless otherwise authorized by the Contracting Officer or the Contracting Officers [sic] representative.

(R4, tab 7 at 3, ¶ 2.4)

4. On 4 April 2011, representatives of MEA and the Army attended a contract post-award meeting (tr. 1/50). Among the attendees was Mr. Rickie Day, MEA's president (R4, tab 49). Mr. Day informed the Army that MEA would not have any appliances to install for three weeks, until approximately 25 April 2015 (tr. 1/54-55; R4, tab 49 at 4). According to Mr. Day, he asked that MEA be allowed to work on weekends or "after hours," and the Army informed him that MEA would not be allowed to do so (tr. 1/57-58). That account is generally corroborated by two other attendees, one an MEA employee and the other the owner of the company whose appliances MEA had been contracted to replace (tr. 1/169, 1/248). However, according to the contracting officer who awarded the contract, Mr. Day rejected any suggestion that MEA work on weekends or after hours (tr. 2/86), an account that three other Army representatives who attended the meeting generally corroborate (tr. 5/113, 6/71, 7/24). A fifth Army representative who attended the meeting does not recall any discussion of weekend or after-hours work (tr. 4/42-43).

5. During the post-award 4 April 2011 meeting, MEA and the Army discussed the possibility of extending the phase-in period, perhaps to 30 June 2011 (tr. 1/55-56, 58), but before the meeting ended the Army decided that it would not extend the phase-in period (tr. 1/63). MEA then informed the Army that it "would probably be impossible to get all that equipment in, in just 21 days"; that is, the 21 days remaining during the expected 25 April 2011 arrival of the appliances and the 15 May 2011 end of the phase-in period

2

(tr. 1/63). However, by the end of the meeting, Mr. Day informed the Army that he would "do everything that [he] had to do to make sure [the Army's] equipment was installed in that 24 days that [he] had"; that is, that MEA would install the appliances by 15 May 2011 (tr. 1/72).

6. Later on 4 April 2011, the contracting officer contacted other vendors, including Inventory Accounting Service, Inc. (IAS), regarding their ability to provide and service washers and dryers (*see* tr. 2/89-90). IAS represented that it "would require to work on the weekends as well as after hours in order to be able to complete the installation" within a 45-day phase-in period (tr. 2/90, 225).

7. The next day, 5 April 2011, the contracting officer requested that MEA "confirm whether you can and will comply with the contract's phase-in period of performance ending May 15, 2011" (R4, tab 15). MEA responded the same day, stating that "[i]t is MEA's intent to meet and fulfill all terms and conditions of the contract" (R4, tab 16). Despite that response, the Army, on 5 April 2011, terminated the contract for cause, finding that "the contractor failed to provide adequate assurance of performance, specifically in reference to the completion of the Phase-in period" (R4, tab 17 at 1). Also on 5 April 2011, the Army entered into a contract with IAS for washers and dryers at Fort Bragg, Simmons Army Airfield, and Camp Mackall, with a phase-in period to be completed by 20 May 2011 (R4, tab 72 at 4, tab 73).

8. On 6 April 2011, MEA, through Mr. Day, requested that the contracting officer rescind the termination of the contract with MEA, or, in the alternative "convert the termination for cause into a no-cost convenience termination" (R4, tab 98 at 1; tr. 1/95-96; *see* tab 153 at 10, ¶ 28, tab 153 at 17-18, ¶¶ 11, 15). The written request did not mention weekend or after-hours work (R4, tab 98). On 8 April 2011, MEA and the Army entered into bilateral Modification No. P00002 (Modification No. 2) (R4, tab 18). The modification recites that its purpose is to convert the termination for cause "to a no-cost Termination for the Government's Convenience," and that "[i]n consideration of the promises set forth herein and for good and valuable consideration, the parties agree as follows:"

    a. This supplemental settlement agreement modifies the contract to reflect a no-cost settlement agreement of $0.00 and Contract Number W91247-11-D-0004 is Terminated in its entirety for the Government's Convenience.

    b. The Contractor agrees that any and all claims which the Contractor, and its assigns, officers, directors, employees, agents and subcontractors may have or acquire against the Government or its present and former agents, employees, or agencies, *arising under or relating to this Contract*, and are

3

[sic] hereby fully and irrevocably releases and forever discharges the Government and anyone claiming by, through or under it, from any and all claims, actions, causes of action, obligations, costs, expenses, damages, losses and liabilities, of any kind or nature, whether known, unknown or unforeseen, vested or contingent, *either encompassed by or which hereafter can arise out of or result from the performance or termination of the Contract.*

c. The Government, in consideration for the Contractor providing the release set forth in paragraph b, above, on behalf of itself, and anyone claiming by, through or under it, does hereby fully and irrevocably release and forever discharge the Contractor, its members, officers, employees and related entities, and anyone claiming by, through or under them, from any and all claims, actions, causes of actions, obligations, costs, expenses, damages, losses and liabilities, of any kind or nature, whether known, unknown or unforeseen, vested or contingent, either encompassed by or which hereafter can arise out of or result from the performance, termination, or non-performance of the Contract.

(R4, tab 18 at 1-2 (emphasis added))

9. Modification No. 2 was negotiated by attorneys for MEA and the Army (tr. 1/96-97, 5/33). The attorneys did not testify at the hearing, and no first-hand account of their negotiations – except the modification itself (R4, tab 18) – appears in the record. The modification does not mention weekend or after-hours work (*id.*).

10. Mr. Day signed the modification for MEA (R4, tab 18 at 1), and testified that with respect to the negotiations that produced the modification, "whatever [the attorneys] talked about I really don't recall"; however, he testified that a condition of the agreement was that Mr. Day persuade the contractor whose appliances were to be replaced "to leave her machines in place until all the other machines were installed" (tr. 1/97). Mr. Day and MEA learned on 30 April 2011, that IAS would be permitted to work on weekends (R4, tab 153 at 11, ¶ 30; tr. 1/99-100). Mr. Day testified that he would not have signed the release if he had known that IAS was going to be allowed to work weekends and after hours, because, as he understood it, IAS was "being treated different than [MEA] was" (tr. 1/100).

11. On 4 May 2011, MEA filed a certified claim with the contracting officer for $850,000 (R4, tab 20). MEA stated that:

This improper [termination for convenience] claim, and breach of contract claim, as noted above, is based on:

    i.    Bad faith by the Army (as shown by an intent to injure MEA by clear and convincing evidence)

    ii.    Clear abuse of discretion by the Army in terminating the contract

    iii.    The Army's award of the Contract with no intention of fulfilling its promises, and subsequent improper convenience termination.

(R4, tab 20 at 9) MEA claimed that it had requested permission to work on Saturdays, but that the contracting officer had refused (*id.* at 4, 9).

12. On 29 June 2011, the contracting officer issued a final decision denying the claim, finding that during the post-award conference MEA had "rejected the idea of working on weekends" (R4, tab 21).

13. On 27 July 2011, MEA timely appealed to this Board.

## DECISION

In Modification No. 2, MEA released all claims against the Army arising from the contract (finding 8).[3] *Martin Edwards*, 12-2 BCA ¶ 35,058 at 172,209, 172,210 n.1. Although MEA asserts that the release is voidable because, MEA contends, the Army induced its assent by misrepresenting that weekend and after-hours work would not be allowed, that assertion fails. If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient. RESTATEMENT (SECOND) OF CONTRACTS § 164(1) (1981). Here, the contract that MEA asserts is voidable is Modification No. 2, which includes the release of claims against the Army (finding 8).

---

[3] The Army challenges whether we possess jurisdiction to entertain MEA's breach claims and challenge to the termination of the contract for cause, contending that MEA did not present those claims to the contracting officer (gov't br. at 64). We disagree: MEA's claim to the contracting officer specifically alleges that the Army breached the contract, and challenges both the Army's exercise of discretion "in terminating the contract," as well as, in MEA's view, the "subsequent improper convenience termination" (finding 11).

5

MEA asserts that its manifestation of assent to the modification was induced by fraudulent and material misrepresentations by Army representatives who, MEA asserts, stated that MEA would not be allowed to work on weekends or "after hours." In *Martin Edwards*, 12-2 BCA ¶ 35,058 at 17,209, we stated that "[i]f the government denied MEA the opportunity to work weekends knowing it would allow weekend work in a later contract, then this *could* constitute a material misrepresentation" (emphasis added). However, upon consideration of the entire record, including the testimony elicited during the hearing, we determine that MEA fails to demonstrate that any misrepresentation regarding weekend or after-hours work was fraudulent or material.[4]

As an initial matter, we find it unnecessary to decide whether the Army actually represented that it would not permit MEA to work on weekends or after hours. Assuming without deciding that the Army misrepresented that weekend work would not be allowed, MEA does not demonstrate that the misrepresentation was fraudulent. For a misrepresentation to be fraudulent, the maker must intend his assertion to induce a party to manifest his assent. RESTATEMENT (SECOND) OF CONTRACTS § 162(1). MEA contends that the Army made the misrepresentation on 4 April 2011 (finding 4), but the Army did not even terminate the contract until 5 April 2011 (finding 7). MEA does not demonstrate that the Army intended, before even terminating the contract, to induce MEA into an agreement to convert the termination from one for cause to a no-cost, no-claims, termination for convenience. Indeed, it would require a substantial stretch of the imagination for us to arrive at such a conclusion.

Nor does MEA demonstrate that such a misrepresentation was material. A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so. RESTATEMENT (SECOND) OF CONTRACTS § 162(2). The materiality of a misrepresentation is determined from the viewpoint of the maker. *Id.* cmt. c. First, MEA fails to demonstrate that the Army knew it would be likely that a prohibition on weekend and after-hours work would induce MEA to agree to Modification No. 2; MEA points to no evidence, for example, that it communicated in any way to the Army before signing the modification that a factor in its decision to sign was that the Army would not allow work on weekends or after hours. For example, MEA's request to the contracting officer that the termination be converted to a no-cost convenience termination does not mention weekend and after-hours work (finding 8).

Second, MEA does not demonstrate that such a prohibition would be likely to induce a reasonable person to manifest his assent to Modification No. 2. Indeed, we find no objectively reasonable connection between an Army statement that it would not allow weekend or after-

---

[4] At page 25 of its opening brief, MEA contends that the Army also misrepresented whether it would allow an extension of the phase-in period, but points to no evidence that such a representation induced it to sign Modification No. 2.

hours work, and a contractor's later decision after the termination of its contract for cause to agree to a no-cost, no-claims conversion of the termination to one for the convenience of the Army. To begin with, Modification No. 2 does not mention weekend or after-hours work, nor does the record, except for the modification itself, contain any first-hand evidence (that is, from the attorneys who negotiated the modification) of the content of the negotiations that produced the modification (finding 8).[5] In addition, MEA left the 4 April 2011 meeting assuring the Army that the appliances would be installed by 15 May 2011, even (according to Mr. Day's account of the meeting) knowing that weekend and after-hours work would not be allowed (findings 4, 5). We do not find it likely that a reasonable contractor that had determined that it could meet an installation date without working weekends or after hours would be induced later to assent to Modification No. 2 by a prohibition on weekend and after-hours work that had been announced before the contractor determined that the appliances could be timely installed. That is, we do not see how such a statement, made when and in the context it is alleged to have been made, would matter to a reasonable contractor deciding whether to sign Modification No. 2. In other words, because, according to MEA, it could have timely installed the appliances during only regular, weekday hours (finding 5), whether weekend and after-hours work would be allowed would have been immaterial to a reasonable contractor, in MEA's position, deciding whether to assent to Modification No. 2.

Indeed, Mr. Day's explanation of the significance to him of the issue of weekend and after-hours work indicates not that a statement prohibiting such work induced him to sign the modification, but that had he known that the Army was going to allow IAS to work on weekends and after hours, he would not have signed it, because, as he understood it, IAS was "being treated different than [MEA] was" (finding 10). That is, having learned after signing Modification No. 2 that the Army was allowing IAS to do what, according to him, MEA was not allowed to do (work on weekends and after hours), Mr. Day felt unfairly treated by comparison. However, the evidence does not demonstrate that the Army made any representations to MEA regarding how it would administer a follow-on contract. Citing RESTATEMENT (SECOND) OF CONTRACTS § 161, MEA contends that the Army misrepresented the facts by failing to disclose to MEA that IAS would be allowed to work on weekends and after hours (app. reply at 161), but the contracting officer and IAS only discussed such work after the Army had met with MEA on 4 April 2011, and did so before the contract was terminated and MEA requested a conversion (findings 6, 8). Therefore, there was nothing about IAS's possible work schedule for the Army to disclose to MEA during the 4 April 2011 meeting, and no conversion request for the Army even to consider until more than a day later. As for what the Army did not disclose between the 4 April 2011 meeting and the 7 April 2011 conversion, MEA failed to establish what, if anything, the

---

[5] Mr. Day's testimony evinces that the Army conditioned agreement to a conversion on MEA persuading the previous contractor to allow existing appliances to remain in place during the phase in of new appliances (finding 10).

7

Army held back in the lead up to Mr. Day signing Modification No. 2, by failing to present any testimony by the attorneys whose negotiations resulted in that modification.

Because MEA failed to demonstrate that the Army induced MEA's assent to Modification No. 2 by a fraudulent or material misrepresentation, that modification is not voidable; consequently, the modification releases MEA's claims against the Army arising from the washer and dryer contract. For these reasons, the appeal is denied.

Dated: 10 March 2015

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 57718, Appeal of Martin Edwards & Associates, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8